UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-CV-61147-WILLIAMS/SELTZER

JUDITH MAME-DURAND,

    Plaintiff,

vs.

LOBRER, LLC

    Defendant.

_____/

## Consent Decree

This Consent Decree ("Agreement") is made and entered into by and between Plaintiff JUDITH MAME-DURAND referred to in this Agreement as ("Plaintiff") and Defendant LOBRER, LLC ("Defendant") The signatories to this Agreement will be referred to jointly as the "Parties." This Agreement is made as a compromise between the Parties for the complete and final settlement of their claims, differences, and causes of action with respect to the dispute described below.

## Preamble

**WHEREAS**, on or about May 23, 2012, Plaintiff filed a lawsuit in the United States District Court for the Southern District of Florida, entitled *Judith Mame-Durand v. Lobrer, LLC*, Case No. 12-CV-61147 (the "Action"), wherein Plaintiff asserted claims for injunctive relief against Defendant based upon purported violations of Title III of the Americans with Disabilities Act, 42 U.S.C. 12181, *et seq.* ("ADA") and related claims for relief respecting the real property and all structures and improvements thereon located at or about 3582 W. Broward Boulevard, Fort Lauderdale, FL 33312 ("the Facility");

**WHEREAS**, Defendant denies and continues to deny the claims and allegations in the Action, and that Plaintiff is entitled to any legal or equitable remedies;

**WHEREAS**, the Parties desire to compromise and fully and finally resolve and settle all actual and potential claims or litigation between them, to

1

avoid the uncertainty, time and expense that would accompany such litigation;

**WHEREAS**, the Parties have agreed, without Defendant admitting liability of any kind, to enter into this Agreement pursuant to which each and every claim and/or cause of action asserted or that could have been asserted by Plaintiff against Defendant shall be fully, forever, and finally released; and

**NOW, THEREFORE**, in consideration of the covenants and mutual promises and agreements contained herein, and other valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

**1. Attorney's Fees, Costs and Re-Inspection Fee**

1.1   Plaintiff and Defendant shall execute this Agreement and Plaintiffs' counsel, Douglas S. Schapiro, Esq., Schapiro Law Group, P.L., 21301 Powerline Road, Suite 106, Boca Raton, FL 33433 ("Plaintiff's Counsel") shall prepare a Stipulation to Approve Consent Decree and Dismiss with Prejudice to be held in escrow until the Agreement is fully executed and the payment of attorney's fees and costs due, pursuant to paragraph 1.1 of this Agreement is paid. Defendant agrees to pay a total settlement amount of **$2,750.00** comprising of attorney's fees and costs. All payments shall be made payable to **"Schapiro Law Group, P.L. Trust Account,"** with an indication that the check is issued "in settlement of Case No. 12-CV-12-CV-61147. Plaintiff's Counsel's Federal Tax ID Number is 45-3337982.

1.2   Upon delivery to Plaintiff's Counsel of the fully executed Agreement and payment of $2,750.00 pursuant to paragraph 1.1, above, Plaintiff shall promptly file the Stipulation to Approve Consent Decree and Dismiss with Prejudice

1.3   Plaintiff agrees to take any and all additional steps required to obtain dismissal of the Action as set forth above. Except as set forth herein, each Party shall be responsible for payment of her own litigation expenses, costs and attorneys' fees.

1.4   Plaintiff and Plaintiff's Counsel acknowledge and agree that they are solely and entirely responsible for the payment and discharge of all federal, state, and local taxes, if any, that may, at any time, be found to be due upon or as a result of the Payment hereunder. Plaintiff and Plaintiff's Counsel, and each of them, expressly acknowledge that Defendant has not made any representations regarding the tax consequences of any Payment received pursuant to this Agreement.

## 2. Alterations or Modifications to the Facilities

2.1     The Parties hereto acknowledge and stipulate that Defendant will modify or alter the items expressly identified by and in the manner specified in Exhibit "A." The repairs or modifications identified in Exhibit "A" shall be completed in all respects no later than six (6) months from the effective date of the execution of this Agreement, which shall be the date indicated by the last signatory to the Agreement. The time period for Completion by Defendant shall be subject to acts of God, force majeure, or events beyond the control of Defendant, such as inability to obtain building or zoning permits, failure of the city/county or state inspectors to make inspections, contractor defaults or work stoppages. In the event of such unforeseen circumstances, the time period for completion of the alterations or modifications in Exhibit "A" shall be extended by the number of days reasonably attributable to such delay-causing event as long as Defendant provide notice to Plaintiff's Counsel prior to the original completion date set forth above.

2.2     The Parties stipulate that Defendant agrees that upon completion of the removal of the barriers and the alterations and modifications set forth in Exhibit "A", Defendant shall provide written notice by certified or registered mail to Plaintiff's Counsel.

2.3     If the modifications or alterations described in Exhibit "A" conflict with the Florida Statutes, building construction standards, county or city regulations or codes, or any other statute, act, law, rule, regulation, code, standard, or state or local governing body whatsoever, Defendant shall attempt to identify and implement a reasonable alternative solution or variance should a readily achievable one exist. If any such alternative solution is applied by Defendant, Defendant agrees to notify Plaintiff's Counsel of same.

2.4     Right to Inspection: The Parties stipulate that Plaintiff shall have sixty (60) days, after Plaintiff's Counsel receives notice of the completion of the alterations or modifications described in Exhibit "A," to inspect the Facility to ensure that Defendant has completed the repairs or modifications described in Exhibit "A." Defendant shall provide Plaintiff or their representative reasonable access to the Facility to verify completion of the work described in Exhibit "A." The Plaintiff's inspection contemplated herein shall be coordinated with the Defendant so that the inspection occurs at a time that minimizes the interruption or intrusion to Defendant. If Defendant fails to provide notice as required by section 2.2, Plaintiff or Plaintiff's representative has the right to inspection the Facility unilaterally.

2.5     If an inspection contemplated herein reveals that any of the alterations or modifications described in Exhibit "A" have not been performed, or have been performed in a manner that the Plaintiff believes does not comply

with Exhibit "A," Plaintiff shall send written notification to Defendant via certified mail. The description of the allegedly deficient or incomplete alteration(s) and/or modification(s) contained within the written notice shall be sufficiently detailed so that the Defendant can identify why the Plaintiff alleges that the alteration(s) and/or modification(s) is deficient and how the allegedly deficient or incomplete item can be cured. Defendant shall have ninety (90) days from the date of receipt of the written notice to complete the item(s) identified in the written notice to the satisfaction of Plaintiff or show cause as to why Plaintiff is incorrect in her assessment of the violations.

### 3. Enforcement Provisions

3.1    In the event the alterations and modifications described in Exhibit "A" are not completed in the time frame set forth in this Agreement, Plaintiff shall be entitled to seek injunctive relief based on the modifications detailed in Exhibit "A."

### 4. Compromise

4.1    The Parties agree and acknowledge that this Agreement is the result of a compromise and shall never be construed as an admission of any liability, wrongdoing, or responsibility on the part of the Released Parties (as defined in section 5.1 below). The Released Parties expressly deny any such liability, wrongdoing, or responsibility.

### 5. Release Given By Plaintiff in Favor of Defendant

5.1    In exchange for the good and valuable consideration set forth herein, Plaintiff and her respective agents, attorneys, members, successors, assigns, parent entities, subsidiary entities, heirs, officers, predecessors, directors, affiliated persons and/or entities, and anyone claiming by or through her (the "Releasing Party"), hereby fully and finally releases, acquits, satisfies, and discharges Defendant, and each of Defendant's respective agents, predecessors, successors, assigns, heirs, parent entities, subsidiary entities, officers, directors, shareholders, employees, attorneys, affiliated persons or entities, including <u>without limitation</u>: (a) all of Defendant's parents, predecessors, successors, assignees, subsidiaries, affiliates and related entities, including without limitation Defendant, and its respective members, trustees, directors, employees, attorneys, and agents, and any and all other entities or person(s) related to or affiliated with them and all current and former tenants or lessees of the Facilities (collectively, the "Released Parties"), of and from any and all legal or equitable claims, demands, liabilities, debts, judgments, damages, expenses, actions, or causes of action of any kind that the Releasing Party and each of them have or may have, whether known or

4

unknown, including without limitation any and all claims arising under Title III of the ADA and/or any other federal, state, or local law governing access features and policies for persons with disabilities at public accommodations whether before any federal, state, or local agency, court of law, or in any other forum, and any and all claims that could have been alleged in the Action. This release also includes all claims for attorney's fees and costs, expert fees and costs, or any other fee or cost incurred to date, with the exception of any future action taken by any of the Parties to enforce the terms of this Agreement.

     5.2    As a material inducement for Defendant to enter into this Agreement, Plaintiff represents and warrants that she is not aware of any pending tort, contract, or other legal claims against Defendant, other than the specific claims brought in this Action under Title III of the ADA, which are released under this Agreement.

     5.3 Plaintiff represents and warrants that no portion of any of the matters released by this Agreement and no portion of any recovery or settlement to which she might be entitled have been assigned or transferred to any other person, firm, or corporation not a Party to this Agreement, in any manner, including by way of subrogation or operation of law or otherwise.

## 6. Notice

     6.1    Unless otherwise provided in this Agreement or by law, all notices or other communications required or permitted by this Agreement or by law to be served on or delivered to any Party to this Agreement shall be delivered as follows:

To Defendant:

Kenneth L. Minerley, Esq.
Minerley Fein, P.A.
1200 N. Federal Highway, Suite 420
Boca Raton, FL 33432
Or
ken@minerleyfein.com

To Plaintiffs:

Douglas S. Schapiro, Esq.
Schapiro Law Group, P.L.
21301 Powerline Road, Suite 106
Boca Raton, FL 33433
Or

5

Schapiro@schapirolawgroup.com

    6.2    A Party may change such address for the purpose of this paragraph by giving timely written notice of such change to all other Parties to this Agreement in the manner provided in this paragraph.

**7. Free Will**

    7.1    The Parties acknowledge that each has had an opportunity to consult with counsel of their own choosing concerning the meaning, import, and legal significance of this Agreement, and that each has done so to the extent desired. In addition, the Parties acknowledge that they each have read this Agreement, as signified by their signatures hereto, and are voluntarily executing the same after having had the opportunity to seek the advice of counsel for the purposes and consideration herein expressed.

**8. Miscellaneous Terms and Conditions**

    8.1    This Agreement contains the complete agreement between the Parties. Any and all prior agreements, representations, negotiations, and understandings between the Parties, oral or written, express or implied, with respect to the subject matter hereof are hereby superseded and merged herein.

    8.2    This Agreement may be executed in counterparts or by copies transmitted by facsimile or email, all of which shall be given the same force and effect as the original.

    8.3    This Agreement may be modified only by a written document signed by all of the Parties. No waiver of this Agreement or of any of the promises, obligations, terms, or conditions hereof shall be valid unless it is written and signed by the Party against whom the waiver is to be enforced.

    8.4    This Agreement shall be binding upon the Parties hereto, their predecessors, successors, parents, subsidiaries, affiliates, assigns, agents, directors, attorneys, officers, families, heirs, spouses, and employees.

    8.5    If any provision of this Agreement shall be finally determined to be invalid or unenforceable under applicable law by a court of competent jurisdiction, that part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts of said provision or the remaining provisions of this Agreement.

    8.6    The Parties acknowledge that they have reviewed this Agreement in its entirety and have had a full opportunity to negotiate its terms, and therefore waive all applicable rules of construction that any provision of this Agreement should be construed against its drafter and agree

that all provisions of the Agreement shall be construed as a whole, according to the fair meaning of the language used.

8.7   Plaintiff represents that, other than the Action, he has not filed or authorized the filing of any complaints, charges, or lawsuits against Defendant with any federal, state, or local court, governmental agency, or administrative agency relating to the subject Facilities, and that if, unbeknownst to Plaintiff, such a complaint, charge, or lawsuit has been filed on her behalf, he or it will use her best efforts to cause it immediately to be withdrawn and dismissed with prejudice.

8.8   The parties and their Counsel agree to execute any and all further documents and perform any and all further acts reasonably necessary or useful in carrying out the provisions and purposes of this Agreement.

8.9   In any action or other proceeding to enforce rights under this Agreement, the prevailing Party shall recover from the losing party all attorneys' fees, litigation expenses, and costs.

8.10 The Parties agree that any ambiguities in this Agreement shall not be construed against the drafter of the Agreement.

8.11 The Parties acknowledge that all Recitals and/or "WHEREAS" clauses preceding paragraph 1 are incorporated as a material part of this Stipulation for Settlement.

8.12 This Agreement is entered into in, and shall be governed by and construed and interpreted in accordance with the substantive laws of, the State of Florida.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date(s) set forth below:

DATED: July ___, 2012        _____
                                              Judith Mame-Durand

DATED: July 26, 2012         _____
                                              For Lobrer, LLC.
                                              By: ERIC EMDE
                                              Title: PRESIDENT

**EXHIBIT A**

1) Defendant agrees to patch (repave) all ¼ inch vertical rises on accessible routes including and limited to, accessible parking spaces, access aisles from accessible parking spaces, ramps from accessible parking spaces, the access routes leading to accessible entrances of the Facility, and the ¼ inch vertical rise located at the east end of the Facility leading to the Napa Auto Store. The patching shall remove and/or bevel at a maximum 45 degrees the ¼ inch vertical rises.

2) Defendant shall remove the parking space marked as an accessible parking space on the far western side of the Facility.

3) Defendant shall add an accessible parking space adjacent to the existing accessible parking space on the north side of the Facility. Both accessible parking spaces shall share a single access aisle. Both accessible parking spaces and shared access aisle shall comply with section 502 of the 2010 ADAAG regulations. The shared access aisle shall lead to a curb ramp referenced in paragraph 4 of Exhibit "A."

4) Defendant shall install a curb ramp which is placed in front of the shared access aisle referenced in paragraph 3 of Exhibit "A." This curb ramp shall comply with section 406 of the 2010 ADAAG regulations.

5) In the store called "Mangoman," Defendant shall affix a sign in a visible location stating "Disabled Assistance Upon Request." Defendant shall also require this tenant to provide a clipboard for disabled patrons upon request.